AO 91 (Rev. 08/09) Criminal Complaint

United States Courts
Southern District of Texas
FILED
November 30, 2021
Nathan Ochsner, Clerk of Court

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

**4:21-mj-2511**

|  |  |
|---|---|
| United States of America | ) |
| v. | ) |
|  | ) Case No. **1:21-MJ-00908** |
|  | ) |
| ABIR MULAWWAH | ) |
|  | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___NOVEMBER 2021___ in the county of ___Hamilton___ in the ___Southern___ District of ___Ohio___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to Defraud the United States; |
| 18 U.S.C. § 1001 | False Statements; |
| 18 U.S.C. § 1956 | Laundering of Money Instruments |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Ferron M. Yi, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.
**via electronic means, specifically Facetime video.**

Date: ___Nov 29, 2021___

_____
*Judge's signature*

City and state: ___Cincinnati, Ohio___    Hon. Stephanie K. Bowman, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMININAL COMPLAINT

I, Ferron M. Yi, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION

1.     I am a Special Agent with the Federal Bureau of Investigation (hereafter "FBI") and have been since February 2020.  I am currently assigned to the Complex Financial Crimes Squad of the Cincinnati Division. In this capacity, I investigate matters involving criminal enterprises, white collar crimes, civil rights violations, money laundering, and various types of fraud. Prior to my employment with the FBI, I served as a sworn peace officer in the State of Georgia for over 10 years. I have received training and investigative experience in interviewing and interrogation techniques, arrest procedures, search and seizure, search warrant applications, electronic media and computer investigations, and various other crimes and investigative techniques.

2.     As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. Consequently, I am an "investigative or law enforcement officer of the United States," within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3.     I am familiar with the facts and circumstances of this case. The information contained in this affidavit is either personally known to me, based upon my interview of various witnesses and review of various records and publicly available information, or has been relayed to me by other agents or sworn law enforcement personnel. Because this affidavit is being submitted for the limited purpose of obtaining criminal complaint and arrest warrants, I have not

included each and every fact known to me concerning the investigation. I have only set forth

facts to establish probable cause for the charges in the complaint.

4.     Based on my training and experience and the facts as set forth in this affidavit,

there is probable cause to believe that violations of 18 U.S.C. § 1001 (False Statements), 18

U.S.C. § 371 (Conspiracy), and 18 U.S.C. § 1956 (Money Laundering) among other offenses,

have been committed by Abir Mulawwah (dob XX/XX/1987; SSN XXX-XX-X343) (hereafter

"Mulawwah"), the Islamic wife of Ismail Shalash.

## II. PROBABLE CAUSE

### A.  An investigation of Ismail Shalash, the purported owner of MDDI Incorporated, revealed that multiple victims in various states have been victimized by Shalash.

5.     In approximately July 2021, the FBI initiated an investigation of Ismail Shalash

(dob XX/XX/1985) (hereafter "Shalash"), the purported owner of MDDI Incorporated (hereafter

"MDDI") for suspected violations of 18 U.S.C. § 1343 (Wire Fraud), and 18 U.S.C. § 1956

(Laundering of Monetary Instruments). During this investigation, it was discovered that Shalash

would sell luxury vehicles online to owners of privately owned car dealerships in various states

and never produce the promised product upon receipt of payment. It was also discovered that

Shalash would at times use the alias of "Armand Brigante" of MDDI to deceive victims into

believing that Shalash and "Armand Brigante" were two separate individuals. In most instances

and when the victims believed an unreasonable amount of time passed for the purchased vehicles

to be delivered, victims would aggressively try to contact Shalash to no avail or without remedy.

In at least one instance, a vehicle described as a 2021 Mercedes-Benz G-Class G AMG 63,

Vehicle Identification Number (hereafter "VIN") W1NYC7HJ7MX395347, that was sold to

VICTIM 1 on or about May 28, 2021, was re-posted for sale on CarGurus.com[1] by "Armand" on or about July 29, 2921. Despite accepting payment and making promises to still deliver the aforementioned vehicle to VICTIM 1, it appeared that Shalash re-posted the vehicle for the purposes of victimizing others. In my training and experience, it appears that Shalash was conducting a fraudulent scheme by never intending to produce the vehicle and instead, wrongfully deceived VICTIM 1 for the purposes of his own financial gain.

6.      When the FBI searched for "Armand Brigante" using the National Crime Information Center (NCIC[2]), the Interstate Identification Index (III[3]), and the Ohio Law Enforcement Gateway (OHLEG[4]), no records were found. Open source checks by the FBI of "Armand Brigante" also yielded no results. In my knowledge, training, and experience, an alias can be any name used in place of a birth name and while there may be legitimate reasons for using another name, an alias is often used by criminals when they do not wish to have their true identity revealed.

7.      Shalash would obtain funds from victims via wire transfer or check. Most funds were received either in Shalash's known personal Chase Bank checking account ending in x4884, which Shalash opened on February 9, 2021, and is the only signatory, or Shalash's known Chase Bank business account ending in x1296, which Shalash opened on April 7, 2021, and is the only signatory. Later, it was also discovered that Shalash was instructing victims to wire funds into a Huntington Bank account ending in x6200, which is another business account

---

[1] CarGurus is an automotive research and shopping website that assists users in contacting sellers and comparing local listings for used and new cars.

[2] NCIC is the United States' central database for tracking crime-related information.

[3] III a/k/a "FBI Triple I Teletype" is a national index of criminal histories in the United States of America, maintained by the Federal Bureau of Investigation at the National Crime Information Center.

[4] OHLEG is a state-of-the-art electronic information network that allows Ohio law enforcement agencies to share criminal justice data efficiently and securely.

for MDDI. Shalash would provide the aforementioned bank account information to victims in order to accept funds via wire transfer. Shalash would also provide his State of Ohio Driver's license to victims in order to legitimize his identity to them and because it is common for car dealerships to request a valid driver's license when completing transactions of vehicle purchases.

8.     On July 14, 2021, VICTIM 1 was interviewed by the FBI. VICTIM 1 is the owner of Marietta Auto Sales, LLC, located in Marietta, Georgia. Due to the circumstances surrounding the COVID-19 pandemic and the lack of vehicle inventory, VICTIM 1 resorted to utilizing private sellers for vehicle purchases. While looking for private sellers, VICTIM 2 introduced VICTIM 1 to Shalash. Upon meeting Shalash, VICTIM 1 purchased a 2021 Mercedes-Benz G 63AMG, VIN W1NYC7HJ7MX395347, in the amount of $218,000.00 via a Bill of Car Sale that was sent to VICTIM 1 via text message and dated May 24, 2021 (which was later sold to VICTIM 5 on July 31, 2021).  VICTIM 1 purchased the car from someone who identified himself via telephone as "Armand Brigante" of MDDI. Oftentimes, car dealerships will request a copy of a valid driver's license from a seller when buying a car for validation purposes. Shalash provided VICTIM 1 with a copy of his State of Ohio driver's license[5] to complete the transaction and it was then discovered that "Armand Brigante" and Shalash were using the same telephone number. When VICTIM 1 and VICTIM 2 looked up MDDI on the State of Ohio Secretary of State's website, it was further discovered that "Ismail Shalash" was listed as the Agent/Registrant for MDDI. This made VICTIM 1 realize that "Armand Brigante" was actually Shalash using an alias. It was further discovered that the Bill of Sale VICTIM 1 was provided had a discrepancy and listed the VIN as W1NYC7HJ7MX395481, contrary to their original agreement.

---

[5] The State of Ohio driver's license that was presented was the driver's license issued to Ismail Shalash, date of birth (XX/XX/1985).

9.      When searching for VIN W1NYC7HJ7MX395481 online via the Ohio Bureau of Motor Vehicles[6], no title records were found. When searching for this same VIN via Accurint[7], no records were found.

10.     On May 28, 2021, VICTIM 1 wired $218,000.00 to MDDI via wire transfer. A review of Shalash's MDDI business account ending in x1296 confirmed that on June 1, 2021, the $218,000.00 was successfully transferred in full. Shortly after the transfer of $218,000.00 was complete and funded to Shalash's account, Shalash told VICTIM 1 that he wished to sell the vehicle to a different buyer in order to make more money. Shalash then promised VICTIM 1 a full refund of the $218,000.00. Eventually, Shalash discontinued all communications with VICTIM 1 and failed to produce the vehicle or a refund to VICTIM 1.

11.     During this same interview, VICTIM 1 advised the FBI of a second known victim. According to VICTIM 1, VICTIM 2 purchased a 2021 Mercedes-Benz G 63AMG for the amount of $215,000.00 from Shalash. Shalash failed to deliver the purchased vehicle to VICTIM 2 or provide a refund to VICTIM 2. In my training and experience, this directly shows that Shalash not only intended to defraud both victims, but established a pattern of utilizing the same fraudulent and deceitful means in order to make a financial gain.

12.     On July 29, 2021, the FBI searched VIN W1NYC7HJ7MX395347 and discovered that this vehicle described as a "2021 Mercedes-Benz G-Class G AMG 63 4MATIC AWD" was posted on CarGurus.com for sale by "Armand" online. The post was subsequently removed on the same date and no longer able to be found online.

---

[6] The Ohio Bureau of Motor Vehicles is an agency of the Ohio Department of Public Safety that registers motor vehicles and issues license plates and driver's licenses in the State of Ohio.
[7] Accurint is a widely accepted locate-and-research tool available to government, law enforcement and commercial customers.

13. On July 22, 2021, VICTIM 2 was interview by the FBI. VICTIM 2 is the owner of QZ Autos, located in Fort Lauderdale, Florida. According to VICTIM 2, on or about April 26, 2021, someone who identified himself as "Armand Brigante" of MDDI had a Mercedes-Benz G63 posted online for sale. "Armand Brigante" then provided VICTIM 2 with a handwritten Bill of Sale dated April 26, 2021, by sending a photograph of the Bill of Sale via text message to VICTIM 2 to stand as the agreement. The Bill of Sale listed MDDI as the seller of a Mercedes-Benz G63, VIN W1NYC7HJ5MX395430. VICTIM 2 purchased this vehicle by sending "Armand Brigante" a deposit of $25,000.00 via wire transfer, and the remaining $190,000.00 via check. Upon "Armand Brigante" successfully receiving the funds, the vehicle was never delivered.

14. A search of VIN W1NYC7HJ5MX395430 online via the Ohio Bureau of Motor Vehicles, indicated that no title records were found. When searching for this VIN via Accurint, it was discovered that on July 2, 2021, a title was issued to H Designs in Chicago, Illinois.

15. A review of Shalash's MDDI Chase Bank business account ending in x1296 confirmed that on April 26, 2021, the wire from VICTIM 2 in the amount of $25,000.00 was successfully transferred. A further review of this bank account confirmed that on May 18, 2021, a deposit in the amount of $190,000.00 was made into this account from Wells Fargo Bank check number 1008 written by VICTIM 2 to MDDI Inc.

16. Because "Armand Brigante" would no longer communicate with VICTIM 2 and in attempts to get the vehicle or a refund, VICTIM 2 traveled to Cincinnati, Ohio, to make contact with "Armand Brigante". During the trip, VICTIM 2 could not make contact with "Armand Brigante"; however, by visiting other businesses that "Armand Brigante" was possibly affiliated with, it was discovered by speaking to Shalash's family members and associates that

"Armand Brigante" was actually Shalash using the alias "Armand Brigante". VICTIM 2 also discovered that MDDI did not appear to have a physical location, which raised concerns as to whether the business existed.

17.     On September 7, 2021, VICTIM 3 and VICTIM 4 were interviewed by the FBI. VICTIM 3 is the owner of Foreign Affairs Motorsport, located in Pompano Beach, Florida. VICTIM 4 is an employee of Foreign Affairs Motorsport and was the individual who communicated with Shalash for the purposes of purchasing a 2021 Mercedes-Benz G550, VIN W1NYC6BJ5MX395902. VICTIM 4 met Shalash through an online vehicle buyer, WITNESS 1. WITNESS 1 is also employed by Foreign Affairs Motorsport and seeks out vehicles online for purchase. WITNESS 1 discovered that Shalash had a "G Wagon" for sale online and referred Shalash to VICTIM 4. VICTIM 4 then communicated with Shalash and agreed to purchase a Mercedes-Benz vehicle from Shalash. During that communication, Shalash also provided a copy of his State of Ohio driver's license to VICTIM 4.

18.     On or about April 2, 2021, VICTIM 3 paid Shalash $5,000.00 as a down payment to purchase the 2021 Mercedes-Benz G550. On May 17, 2021, Shalash signed an Authorization Release Affidavit for a 2021 Mercedes-Benz G550, VIN W1NYC6BJ5MX395902 and sent it via email using the email address armandbrigante1@gmail.com. In that Affidavit, MDDI was listed as the "Registered Owner" of the vehicle. On or about May 18, 2021, VICTIM 3 wired Shalash $161,070.00 to pay for the 2021 Mercedes-Benz G550 in full for a total of $166,070.00. As time passed, the vehicle was never delivered to VICTIM 3 as promised by Shalash. Initially, Shalash claimed that the vehicle delivery was delayed; ultimately the vehicle was never produced.

19.     A search of VIN W1NYC6BJ5MX395902 online via the Ohio Bureau of Motor Vehicles, indicated that on June 14, 2021, a title to this vehicle was issued to a private owner.

When searching for this VIN via Accurint, it was discovered that on June 14, 2021, a title was issued to E.D. of Woodruff, South Carolina.

20.     A review of Shalash's Chase Bank personal checking account ending in x4884 confirmed that on April 19, 2021, the wire from VICTIM 3 in the amount of $5,000.00 for the down payment was successful and the funds cleared. A review Shalash's MDDI Chase Bank business account ending in x1296 confirmed that on May 18, 2021, a wire transfer from VICTIM 3 in the amount of $161,070.00 was successful and the funds cleared.

21.     Because the vehicle was never delivered, VICTIM 4 traveled to Cincinnati, Ohio, to make contact with Shalash. On or about June 13, 2021, VICTIM 4 made in-person contact with Shalash. During that contact, Shalash apologized to VICTIM 4 and offered to get VICTIM 4 a different vehicle. When VICTIM 4 refused to accept an alternate vehicle in lieu of the one that was already paid for, Shalash agreed to pay a refund in full. On this same date, Shalash provided VICTIM 4 with $20,000.00 in cash to go toward a refund. Then, on or about August 8, 2021, VICTIM 4 made in-person contact with Shalash again in Cincinnati, Ohio, and accepted another $20,000.00 to go toward the refund balance. When VICTIM 4 tried to collect a third payment, Shalash claimed there was a hold on his bank account and could not access funds. Shalash then discontinued communication with VICTIM 4 and has failed to provide a refund in full.

22.     On September 3, 2021, VICTIM 5 made a report involving Shalash to the FBI's National Threat Operations Center (hereafter "NTOC")[8] line. VICTIM 5 who is the owner of Motorenn, Incorporated, located in Los Angeles, California, reported to NTOC that a transaction was made with Shalash in the amount of $225,000.00 for the purchase of a Mercedes-Benz. It

---

[8] NTOC provides the public 24 hours a day and 7 days a week access to submit information to the FBI via commonly used communication channels. NTOC receives, prioritizes, and processes actionable information.

was agreed that VICTIM 5 would send a transportation truck from Los Angeles, California, to Cincinnati, Ohio, to pick up the Mercedes-Benz. When VICTIM 5's transportation truck arrived in Cincinnati, Ohio, the driver was unable to locate Shalash or the vehicle. Shalash then became difficult to work with and while the issue with the transportation of the Mercedes-Benz was ongoing, Shalash attempted to engage VICTIM 5 in another vehicle transaction. VICTIM 5 declined purchasing an additional vehicle from Shalash and has not received his originally purchased Mercedes-Benz or a refund.

23.     On September 7, 2021, VICTIM 5 was interviewed by the FBI. During this interview, it was discovered that VICTIM 5 was first approached by Shalash via telephone regarding a potential car sale. During that conversation, Shalash offered to sell VICTIM 5 a 2021 Mercedes-Benz G 63AMG, VIN W1NYC7HJ7MX395347 for $208,000.00. VICTIM 5 did not know Shalash prior to the telephone contact. VICTIM 5 went through the general verification procedures prior to the purchase of the vehicle and drafted a Bill of Sale that was signed by VICTIM 5 and Shalash on July 31, 2021. VICTIM 5 paid for the vehicle and sent a transportation truck to pick up the vehicle. This vehicle was successfully delivered to VICTIM 5 in Los Angeles, California, and this initial transaction went smoothly.

24.     After successfully purchasing the vehicle from Shalash, VICTIM 5 immediately received another telephone call from Shalash in August 2021 inquiring about the sale of a 2021 Mercedes-Benz G63 AMG, VIN W1NYC7HJ5MX401244. During conversation with Shalash, he provided VICTIM 5 with a copy of his State of Ohio driver's license and electronic mail address armandbrigante1@gmail.com for the DocuSign[9] agreements. VICTIM 5 agreed to purchase the vehicle and wired Shalash $225,000.00 after both VICTIM 5 and Shalash signed a

---

[9] DocuSign is a company that allows organizations to manage electronic agreements and sign documents electronically.

Bill of Sale dated August 9, 2021. Upon Shalash confirming that he received the $225,000.00 via wire transfer, VICTIM 5 sent a transportation truck from Los Angeles, California, to Cincinnati, Ohio, to pick up the vehicle. When the truck driver arrived in Cincinnati, Ohio, neither Shalash nor the vehicle were at the agreed upon pick-up location. When VICTIM 5 was able to get in touch with Shalash regarding this, Shalash claimed that the truck driver arrived late so the vehicle could not be picked up. VICTIM 5 then advised he would send a different transportation truck to pick-up the vehicle.

25.    During the second attempt to pick-up the vehicle, Shalash offered to sell VICTIM 5 a different vehicle described as a 2021 Mercedes-Benz AMG GT Black Series for $485,815.00. Although VICTIM 5 and Shalash signed a Bill of Sale dated August 23, 2021, VICTIM 5 did not send funds for this vehicle. Shalash then told VICTIM 5 that he was going to have the Mercedes-Benz G63 transported from Cincinnati, Ohio, to Los Angeles, California, on his own truck. Shalash told VICTIM 5 that he used Prestine Transport Incorporated or Logistics Incorporated to transport vehicles; however, VICTIM 5 could not locate Department of Transportation numbers for either company and was unable to confirm their existence. When VICTIM 5 communicated this to Shalash, he provided VICTIM 5 with a telephone number to the truck driver claiming to be "Igean Vaslioq", telephone number XXX-XXX-0280, and electronic mail address Igeanv@gmail.com. The alleged truck driver then began communicating with VICTIM 5 while giving status updates of the transport. On August 27, 2021, VICTIM 5 received a text message from the alleged truck driver indicating that he was two hours away from the drop-off location in Los Angeles, California. Essentially, the truck driver never arrived and subsequently discontinued communication with VICTIM 5.  The vehicle was never delivered. VICTIM 5 reached out to Shalash and told him that the vehicle was never delivered and he could

no longer get in touch with the truck driver. VICTIM 5 never received the vehicle. Shalash then promised VICTIM 5 a refund for the vehicle which was never provided.

26. A review of financial statements provided by VICTIM 5 confirmed that on August 12, 2021, a wire of $225,000.00 from Motorenn's operations account ending in x0726 to MDDI's Huntington Bank account ending in x6200 was completed and successfully cleared.

27. A search of VIN W1NYC7HJ5MX401244 online via the Ohio Bureau of Motor Vehicles, indicated that no title records were found. When searching for this VIN via Accurint, no records were found.

28. On September 20, 2021, NTOC received a complaint from VICTIM 6 who reported being a victim of wire fraud. VICTIM 6 who is the owner of Marks Motors, located in Boerne, Texas, reported to NTOC that two transactions to purchase three different Mercedes-Benz vehicles were made with Shalash in the amount of approximately $990,000.00. VICTIM 6 reported that someone who identified himself as "Armand Brigante" of MDDI contacted Marks Motors via telephone regarding the sale of rare Mercedes-Benz vehicles.

29. On September 21, 2021, VICTIM 6 was interviewed by the FBI. VICTIM 6 first began communicating with Shalash on September 1, 2021, about purchasing Mercedes-Benz vehicles after Shalash called the dealership and presented himself as a car dealer named "Armand Brigante" for MDDI. Initially, Shalash convinced VICTIM 6 that he had two 2021 Mercedes-Benz G63 vehicles for sale. Shalash provided VICTIM 6 with photographs of the vehicles, photographs of the titles, and other applicable information for the car sale transaction via text message from telephone number XXX-XXX-0280 (the same telephone number that was provided to VICTIM 5 as a contact number for a truck driver picking up vehicles in Cincinnati,

Ohio, that were sold to VICTIM 5). Because Mercedes-Benz G63's are difficult to find, VICTIM 6 agreed to purchase the vehicles from Shalash.

30.     On September 8, 2021, "Armand Brigante" sent VICTIM 6 a signed Bill of Sale via email from email address armandbrigante1@gmail.com for the purchase of two vehicles totaling $497,000.00: 2021 Mercedes-Benz G63, VIN W1NYC7HJ7MX402376 and 2021 Mercedes-Benz G63, VIN W1NYC7HJ7MX398524. In their correspondence, VICTIM 6 was provided with photographs of State of Ohio titles for the vehicles. Of note, Title Number 78 0247 01101 listed the VIN for the 2021 Mercedes-Benz G63, VIN W1NYC7HJ7MX398524 as "WINYC7HJMX398524". This title appears to be fictitious because the VIN on the title showed a 16-character identification instead of the 17-character identification[10] reflected on the Bill of Sale. It appeared that Shalash altered the VIN on the title document, making it appear that the document was fraudulent. In my training and experience, the act of replacing or altering a VIN in order to mislead customers is a direct indicator of fraud.

31.     The following day on September 9, 2021, VICTIM 6 wired $497,000.00 into Shalash's Huntington Bank account ending in x6200 for MDDI. Shalash then told VICTIM 6 to set up a truck to transport the vehicles from Ohio to Texas. Prior to the vehicles being picked up by the truck driver, Shalash also sold VICTIM 6 a 2021 Mercedes-Benz AMG GT Black Series, VIN W1KYJ8BA1MA042008 for approximately $493,815.00, which was transferred to the same Huntington Bank account ending in x6200 via wire on September 17, 2021. Due to this particular vehicle being rare and hard to find, the Mercedes-Benz AMG GT Black Series was purchased without a vehicle order. Rather, VICTIM 6 and Shalash made a purchase agreement

---

[10] In early 1980s all manufacturers were required by U.S. National Highway Traffic Safety Administration (USDOT) to assign 17-character VINs to all vehicles.

for this vehicle via text message and on September 18, 2021, Shalash indicated to VICTIM 6 that the "black series on its way effective yesterday 8 pm".

32.     While truck driver hired by VICTIM 6 was in transit to Ohio pick up the vehicles, Shalash inquired about where the truck driver was on multiple occasions and often asked for an estimated time of arrival. This led VICTIM 6 to further believe the sales were legitimate. When the truck driver arrived at the agreed location on September 20, 2021, the truck driver indicated to VICTIM 6 that there were no Mercedes-Benz vehicles at that location for pick-up and no sign of Shalash. VICTIM 6 attempted to contact Shalash to get a status update; however, Shalash would not answer or return calls. It further appeared that Shalash disconnected his telephone.

33.     During this interview, VICTIM 6 also disclosed to the FBI that Shalash made contact with VICTIM 7 and VICTIM 8 via telephone. During this interaction, Shalash presented himself as "Armand Brigante" of MDDI to VICTIM 7 and VICTIM 8.

34.     A review of financial statements provided by VICTIM 6 confirmed that on September 9, 2021, a wire transfer of $252,000.00 and $245,000.00 from Marks Motors account to MDDI's Huntington Bank account ending in x6200 was completed and successfully cleared. A review of those financial statements also confirmed that on September 17, 2021, a wire transfer of $493,185.00 from Marks Motors account to MDDI's Huntington Bank account ending in x6200 was completed and successfully cleared.

35.     A search of VIN W1NYC7HJ7MX402376 online via the Ohio Bureau of Motor Vehicles revealed no title records were found. A search of this VIN via Accurint, revealed no records were found. A search of VIN W1NYC7HJ7MX398524 online via the Ohio Bureau of Motor Vehicles revealed no title records were found. When searching for this VIN via Accurint,

it appeared that this vehicle was registered to Leads 360 LLC in Bethesda, Maryland on September 10, 2021. A search of VIN W1KYJ8BA1MA042008 online via the Ohio Bureau of Motor Vehicles revealed no title records were found. When searching for this VIN via Accurint, no records were found.

36.     On September 21, 2021, the FBI made contact with VICTIM 7 via telephone to discuss any potential involvement with Shalash. VICTIM 7 disclosed that VICTIM 7 works as an independent car dealer and met "Armand Brigante" after seeing an online post on AutoTrader[11] advertising vehicles for sale. VICTIM 7 communicated with "Armand Brigante" via text message regarding purchasing vehicles, specifically two 2021 Mercedes-Benz G63s. During their communications, VICTIM 7 agreed to purchase two vehicles from "Armand Brigante" and was sent bank account information for MDDI to send wire transfers. "Armand Brigante" also told VICTIM 7 that he was going to send him a signed Bill of Sale from email address armandbrigante1@gmail.com. Because the email would not go through, "Armand Brigante" sent VICTIM 7 a photograph of the signed Bill of Sale dated August 31, 2021, for the following vehicles: a 2021 Mercedes-Benz G 63AMG, VIN W1NYC7HJ5MX395348 and a 2021 Mercedes-Benz G 63AMG, VIN W1NYC7HJ7MX402736 for a total amount of $450,000.00. "Armand Brigante" then instructed VICTIM 7 to wire the funds to the MDDI Huntington Bank account ending in x6200 belonging to Shalash.

37.     "Armand Brigante" also sent VICTIM 7 photographs of the vehicle titles. On at least one of the titles, "MDDI" was the name of the company of the vehicle listed. When VICTIM 7 asked "Armand Brigante" for an explanation of who MDDI was, VICTIM 7 was

---

[11] AutoTrader is an online marketplace for car buyers and sellers.

told by "Armand Brigante" that he was doing the deal as a "DBA[12]". Due to this, VICTIM 7 did

research on MDDI and discovered that MDDI was registered to someone named "Ismail

Shalash" and not "Armand Brigante". VICTIM 7 then ran a CarFax[13] report on one of the

vehicles and discovered that the car was already sold to a car dealership in San Jose, California.

When VICTIM 7 confronted "Armand Brigante" and asked why the vehicle already had a listed

owner as a car dealership, "Armand Brigante" discontinued communications with VICTIM 7.

Due to this, VICTIM 7 realized that the deal was fraudulent and never wired the funds to the

MDDI account that he was instructed to use when making the transaction.

38.     A search of VIN W1NYC7HJ5MX395348 and VIN W1NYC7HJ7MX402736

online via the Ohio Bureau of Motor Vehicles yielded no results. When searching for both VINs

via Accurint, no results were found.

39.     On September 23, 2021, the FBI made contact with VICTIM 8 via telephone.

VICTIM 8 is the owner of McLaren Charlotte located in Charlotte, North Carolina, and was

contacted by "Armand Brigante" when he called the dealership trying to sell vehicles. Initially,

"Armand Brigante" presented VICTIM 8 with two vehicles for sale: a 2021 Mercedes-Benz G

63AMG, VIN W1NYC7HJ7MX402376 and a 2021 Mercedes-Benz 63 AMG, VIN

W1NYC7HJ7MX398524. "Armand Brigante" negotiated a price of $245,000.00 for each vehicle

for a total of $490,000.00. On September 4, 2021, "Armand Brigante" sent VICTIM 8 an email

from armandbrigante1@gmail.com with the Bill of Sale for the two vehicles attached. "Armand

Brigante" then presented a third 2021 Mercedes-Benz G 63AMG. Shalash negotiated a price of

$242,500.00 with VICTIM 8 through text messaging. All photographs of vehicles and titles were

---

[12] DBA stands for "doing business as". Filing for a DBA allows someone to conduct business under a name other than the original filing name.
[13] CarFax is a commercial web-based service that supplies vehicle history reports to individuals and businesses on used cars and light trucks for American and Canadian consumers.

also sent to VICTIM 8 through text messaging. "Armand Brigante" instructed VICTIM 8 to send all wire transactions to the MDDI Huntington Bank account ending in x6200 belonging to Shalash.

40.     VICTIM 8 then realized that the titles were "duplicate" titles which led him to believe the titles were fraudulent because it is unlikely that a brand new vehicle would have a duplicate title. In addition to this, when VICTIM 8 requested that "Armand Brigante" send him a copy of his dealer's license, VICTIM 8 was given a copy of a dealer's license with a name that reflected MDDI. It was then discovered that MDDI was registered to "Ismail Shalash" and not "Armand Brigante". Due to the multiple "red flags", VICTIM 8 did not send "Armand Brigante" the wire transfers to complete the deal.

41.     When searching both VINS online via the Ohio Bureau of Motor Vehicles, no records were found. An earlier search of VIN W1NYC7HJ7MX402376 on Accurint yielded no results; however, indicated that VIN W1NYC7HJ7MX398524 was titled to Leads 360 LLC in Bethesda, Maryland, on September 10, 2021.

42.     The chart below summarizes the transactions discussed above:

| Date of Agreement: | Date of Wire: | Victim: | Amount: (/attempted) | Vehicle Information: | Total Loss: |
|---|---|---|---|---|---|
| Bill of Sale dated 5/24/2021 | 5/28/2021 | VICTM 1; Marietta Auto Sales Marietta, GA | $218,000.00 | 2021 Mercedes-Benz G 63AMG, VIN W1NYC7HJ7MX395481 | $218,000.00 |
| Bill of Sale dated 4/26/2021 | 4/20/2021 $25,000.00  5/18/2021 $190,000.00 (check) | VICTIM 2; QZ Autos, Fort Lauderdale, FL | $215,000.00 | 2021 Mercedes-Benz G63, VIN W1NYC7HJ5MX395430 | $215,000.00 |
| Bill of Sale dated 5/17/2021 | 4/2/2021 $5,000.00 | VICTM 3; Foreign | $166,070.00 | 2021 Mercedes-Benz G 550, VIN W1NYC6BJ5MX395902 | $126,070.00 |

|  |  |  |  |  | subtracted payments: $20,000.00/June $20,000.00/Aug |
|---|---|---|---|---|---|
| Bill of Sale dated 8/9/2021 | 8/12/2021 $225,000.00 | VICTM 5; Motorenn, Los Angeles, CA | $225,000.00 | 2021 Mercedes-Benz G63 AMG, VIN W1NYC7HJ5MX401244 | $225,000.00 |
| Bill of sale dated 8/23/2021 | N/A | VICTM 5; Motorenn, Los Angeles, CA | $485,815.00 (attempted) | 2021 Mercedes-Benz AMG GT Black Series, VIN W1KYJ8BA1MA042008 | $0.00 – victim did not fund |
| Bill of Sale dated 9/8/2021 | 9/9/2021 $497,000.00 | VICTM 6; Marks Motors, Boerne, TX | $497,000.00 | 2021 Mercedes-Benz G63, VIN W1NYC7HJ7MX402376  2021 Mercedes-Benz G63, VIN W1NYC7HJ7MX398524 | $497,000.00 |
| Bill of Sale N/A | 9/17/2021 $493,815.00 | VICTM 6; Marks Motors, Boerne, TX | $493,815.00 | 2021 Mercedes-Benz AMG GT Black Series, VIN W1KYJ8BA1MA042008 | $493,815.00 |
| Bill of Sale dated 8/31/2021 | N/A | VICTIM 7; Select Auto, San Diego, CA | $450,000.00 (attempted) | 2021 Mercedes-Benz G 63AMG, VIN W1NYC7HJ5MX395348  2021 Mercedes-Benz G 63AMG, VIN W1NYC7HJ7MX402736 | $0.00 – victim did not fund |
| Bill of Sale dated 9/4/2021 | N/A | VICTIM 8; McLaren Charlotte, Charlotte, NC | $245,000.00 (attempted)  $245,000.00 (attempted)  $242,500.00 (attempted) | 2021 Mercedes-Benz G 63AMG, VIN W1NYC7HJ7MX402376  2021 Mercedes-Benz G 63AMG, VIN W1NYC7HJ7MX398524  2021 Mercedes-Benz G 63AMG, VIN unknown | $0.00 – victim did not fund |
|  |  |  | **$3,483,200.00** |  | **$1,774,885.00** |

**B. A review of Currency Transaction Reports from Hard Rock Casino in Cincinnati, Ohio appear that Shalash was laundering proceeds after defrauding multiple victims.**

43.     A review of Shalash's Chase Bank account ending in x1296 for MDDI showed multiple cash withdrawals. A review of scanned copies of withdrawal slips that were physically signed by Shalash indicated multiple withdrawals with notes indicating the cash was being withdrawn for "Hard Rock Cincinnati". A review of this account showed that almost immediately after receiving funds from victims, Shalash would make withdrawals of large sums for the purposes of transferring those funds into the casino. This reveals significant indicia of fraud because various cash withdrawals and movement of funds from this account to other accounts gives the appearance that Shalash was trying to change large amounts of money obtained from his fraud into an origination of a legitimate source. For example, Shalash made the following withdrawals within weeks of receiving funds from victims for the purposes of deposit into Hard Rock Casino in Cincinnati, Ohio:

    a.  May 18, 2021 - $40,000.00

    b.  May 24, 2021 - $15,000.00

    c.  May 27, 2021 – $50,000.00

    d.  June 1, 2021 - $100,000.00

    e.  June 2, 2021 - $115,000.00

44.     When the FBI reviewed Currency Transactions Reports (hereafter "CTR[14]") from Hard Rock Casino in Cincinnati, Ohio, it appeared that Shalash had a casino account established at the Hard Rock Casino Cincinnati. On this account, Shalash listed XX/XX/1985 as his date of

---

[14] CTRs must be filed by casinos to report each transaction in currency involving cash-in and cash-out of more than $10,000.00 in a gaming day.

birth and armandbrigante1@gmail.com as his email address. These CTR Detail Reports included the gaming date, person involved in the transaction (Shalash), and cash-in and cash-out credits. A review of the CTRs also showed amounts that were broken down to signify how much was purchased in chips (cash-in), how much was redeemed in chips (cash-out), any cash withdrawals, and any advances (such as casino credit card advances). When the CTRs were reviewed, it appeared that Shalash was laundering money through Hard Rock Cincinnati by cashing in large amounts of money into the casino and then cashing out the money in credits.

45.     In one example, upon Shalash receiving $225,000.00 from VICTIM 5 on August 12, 2021, Shalash purchased $81,000.00 in chips at Hard Rock Cincinnati and redeemed $227,575.00 in chips within less than one week of those funds successfully clearing in Shalash's bank account. A strong indicator of money laundering is when a player converts money into chips and then redeems those chips (or "cashes-out") within a relatively short period of time. The below chart summarizes the Hard Rock Casino Cincinnati CTRs outlining Shalash's casino activity from May 24, 2021 through August 24, 2021:

| Gaming Date: | Cash-In | Cash-Out |
|---|---|---|
| 5/24/2021 | N/A | $30,400.00 – Redeem Chips<br>$1,500.00 – Credit Card Advance |
| 5/25/2021 | N/A | $14,551.00 – Redeem Chips |
| 5/27/2021 | $36,500.00 – Purchase of Chips | $91,500.00 – Redeem Chips<br>$50,000.00 – Cash |
| 5/29/2021 | N/A | $13,000.00 – Redeem Chips<br>$2,500.00 – Credit Card Advance |
| 5/30/2021 | $14,656.00 – Purchase of Chips | N/A |
| 6/1/2021 | N/A | $59,000.00 – Redeem Chips |
| 6/9/2021 | N/A | $15,850.00 – Redeem Chips |
| 6/10/2021 | $10,900.00 – Purchase of Chips | N/A |
| 6/13/2021 | N/A | $17,000.00 – Redeem Chips |
| 6/14/2021 | $25,000.00 – Purchase of Chips | $34,000.00 – Redeem Chips |
| 7/20/2021 | N/A | $12,600.00 – Redeem Chips |
| 7/23/2021 | $23,900.00 – Purchase of Chips | N/A |
| 7/25/2021 | $15,800.00 – Purchase of Chips | N/A |

| 7/27/2021 | $12,920.00 – Purchase of Chips | $17,925.00 – Redeem Chips |
|---|---|---|
| 7/28/2021 | $12,800.00 – Purchase of Chips | $18,560.00 – Redeem Chips |
| 7/30/2021 | $15,300.00 – Purchase of Chips | N/A |
| 8/4/2021 | N/A | $56,900.00 – Redeem Chips |
| 8/6/2021 | $15,400.00 – Purchase of Chips | $23,280.00 – Redeem Chips |
| 8/8/2021 | $64,800.00 – Purchase of Chips | N/A |
| 8/9/2021 | N/A | $30,000.00 – Redeem Chips |
| 8/11/2021 | N/A | $27,200.00 – Redeem Chips |
| 8/13/2021 | N/A | $28,475.00 – Redeem Chips |
| 8/16/2021 | $48,200.00 – Purchase of Chips | $36,900.00 – Redeem Chips |
| 8/15/2021 | $12,900.00 – Purchase of Chips | $35,000.00 – Redeem Chips |
| 8/17/2021 | $20,000.00 – Purchase of Chips | $72,200.00 – Redeem Chips |
| 8/18/2021 | N/A | $55,000.00 – Redeem Chips |
| 8/19/2021 | $18,380.00 – Purchase of Chips | $16,200.00 – Redeem Chips |
| 8/20/2021 | $60,000.00 – Purchase of Chips | $30,000.00 – Redeem Chips |
| 8/22/2021 | $35,500.00 – Purchase of Chips | N/A |
| 8/24/2021 | $21,840.00 – Purchase of Chips | N/A |
| **Total:** | **$464,796.00** | **$789,541.00** |

46.     In addition to the CTRs, when the FBI reviewed the "Report Front Money Journal by Gaming Dt-Player" (hereafter "Front Money Journal") associated with Shalash's Hard Rock Cincinnati account for the month of August, it appeared that Shalash made several deposits of "front money" into Hard Rock Cincinnati. Front money is described as deposits of funds that a player intends to use for gaming purposes. The front money is deposited at the casino case for use by the player for subsequent gaming activity at the casino. This money can also be "refunded" to the player before the player uses the funds or left in the casino account as a "balance" until it us used or redeemed. A strong indicator of money laundering is when the player gambles minimally or not at all, and then takes the balance out in cash, in most instances in the same day or within a matter of days. On the Front Money Journal for August 19, 2021, Shalash had a balance of $125,000.00 remaining at Hard Rock Cincinnati. Below are the following are transactions of front money that Shalash made to Hard Rock Cincinnati:

a.   August 4, 2021 - $48,000.00 (Refund issued this same day)

    b.   August 9, 2021 - $95,000.00

    c.   August 9, 2021 - $10,000.00

    d.   August 17, 2021 - $125,000.00

    e.   August 17, 2021 - $25,000.00

    f.   August 17, 2021 - $10,000.00

    g.   August 18, 2021 - $10,000.00

    h.   August 18, 2021 - $90,000.00 (Voided this same day)

    i.   August 18, 2021 - $45,000.00

    j.   August 19, 2021 - $40,000.00

47.    Review of both the CTRs and the Front Money Journal associated with Shalash's casino account at Hard Rock Cincinnati located in Cincinnati, Ohio, reveals that Shalash was redeeming chips totaling significantly more than the amount of deposit. Hard Rock Cincinnai documents also reveals patterns of suspicious activity in which Shalash's casino account was used as a conduit to transfer significant amounts of funds he received from victims through financial transaction channels.

### C.  Shalash fled overseas after marrying Mulawwah in a religious Islamic ceremony.

48.    On September 30, 2021, Federal arrest warrant 1:21-MJ-00696 for Shalash was obtained for the arrest of Shalash. When Agents attempted to serve the aforementioned arrest warrant, Agents learned through family members and the community that Shalash fled overseas by fleeing to Jordan and then later traveling to Morocco. FBI then published an FBI Wanted Poster indicating that Shslash was a fugitive. On October 4, 2021, the FBI received a call from a known extended relative who requested identity protection (hereafter ANONYMOUS 1). ANONYMOUS 1 reported that Shalash recently married Mulawwah and fled overseas with her.

ANONYMOUS 1 also reported that Shalash was known to carry large amounts of cash in a duffel bag and was often in possession of multiple passports and identifications. ANONYMOUS 1 further reported that Shslash and Mulawwah had intentions of fleeing to Morocco, where Mulawwah's parents were originally from.

49.     Agents learned that Shalash and Mulawwah engaged in a religious[15] Islamic ceremony in Cincinnati, Ohio, and considered themselves to be religiously married. Agents also learned that Mulawwah was a resident of Houson, Texas, and traveled to Cincinnati, Ohio, to engage in the religious marriage. FBI confirmed that Mulawwah is a United States citizen maintaining a residence in Houston, Texas, and her mother's country of birth is Morocco.

**D.  Bank records indicate that Shalash depleted his bank accounts and cashed out large amounts of money before leaving Cincinnati, Ohio.**

50.     A review of Shalash's Huntington Bank account ending in 7247 indicates that in addition to funds spent at Hard Rock casino outlined above, in the month of September 2021 , Shalash made withdrawals in the form of cashier's checks totaling $500,000.00. The cashier's checks indicated that the funds were used for "Hard Rock" or "Hard Rock Cincinnati" and on some withdrawals had notes that stated "not used for purpose intended". In my training and experience, I would be led to believe that Shalash utilized his same patterns of utilizing Hard Rock Cincinnati for the purposes of laundering money to conceal large sums of cash. My training and experience would further have me believe that the purpose of Shalash depleting his account in a short period of time was to take the money with him in the form of cash when he fled Cincinnati, Ohio, against Federal Parole rules and regulations. Below is an outline of the September cashier's checks made by Shalash at Huntington Bank:

    a.   September 9, 2021 - $200,000.00

---

[15] Shalash could not legally marry Mulawwah because he is already legally married.

b. September 9, 2021 - $200,000.00

c. September 10, 2021 - $100,000.00

51.     Approximately three days later, on September 13, 2021, Mulawwah opened safe deposit box number 710740900337 at PNC located at 14550 Memorial Drive, Houston, Texas, 77079. FBI has confirmed that she is the only signatory on the safe deposit box.

52.     Further, surveillance footage from the PNC revealed that immediately upon Mulawwah opening a safe deposit box at PNC, she entered the safe with a large backpack that she had on her person. Mulawwah was also given a large safe deposit box (described by PNC as a "5x10") to carry into the PNC safe to secure. Mulawwah carried both items into the safe to access the safe deposit box at PNC.

53.     On September 23, 2021, Mulawwah arrived in Morocco.

54.     On October 22, 2021, SOURCE 1 reported that Shalash was storing funds in a safe deposit box opened by Shalash's Islamic wife, Mulawwah. Just three days after Shalash's last major withdrawal from Huntington Bank, Mulawwah opened a safe deposit box at PNC, corroborating what SOURCE 1 reported to the FBI.

**E. Information from SOURCE 1 corroborates that Mulawwah and Shalash made a concerted effort to flee overseas and that Mulawwah is assisting Shalash in harboring funds that Shalash obtained through the fraud.**

55.     In October 2021, the FBI opened SOURCE 1 who has access and information pertaining to both Shalash and Mulawwah. On October 19, 2021, the FBI received information from SOURCE 1 that Shalash was in Morocco and living with Mulawwah and her family. SOURCE 1 indicated that Mulawwah traveled to Morocco from Houston, Texas, and Shalash crossed the border into Mexico and fled overseas. FBI was able to confirm that Shalash landed in Jordan on September 28, 2021, and then left to United Arab Emirates on October 2, 2021. FBI

also confirmed that Mulawwah flew from Houston, Texas, to Morocco on September 23, 2021. In my training and experience, the purpose of Shalash taking flight overseas by crossing a border is to evade capture. It further appeared that due to the close proximity of Shalash and Mulawwah's travel is an indicator that they made a concerted effort to flee and Mulawwah assisted Shalash in fleeing overseas. Further, the FBI was able to confirm that ten days prior to Mulawwah arriving in Morocco, she opened a safe deposit box at PNC Bank.

56.     On October 22, 2021, SOURCE 1 reported that Mulawwah was storing funds from Shalash in a safe deposit box at PNC located at 14550 Memorial Drive, Houston, Texas, 77079. SOURCE 1 reported that the safe deposit box was opened by Mulawwah and contained cash that Mulawwah received from Shalash. FBI was able to confirm that Mulawwah opened a safe deposit box at the aforementioned PNC on September 13, 2021, ten days prior to Mulawwah arriving in Morocco. Safe deposit box number 710740900337 was opened by Mulawwah and she is the only signatory on the safe deposit box. On this same date, SOURCE 1 reported that Shalash was going to instruct Mulawwah and/or relatives to return to the United States to access the safe deposit box and bring funds back to Morocco. On November 4, 2021, SOURCE 1 reported that Mulawwah was planning a trip to the United States at the end of November 2021 for the purposes of accessing cash stored in her safe deposit box at PNC.

57.     On November 16, 2021, SOURCE 1 reported that Mulawwah was going to arrive in Houston, Texas, on November 19, 2021 and stay for approximately 12 days. SOURCE 1 reported that Mulawwah was flying from Morocco to France and then from France to Atlanta, Georgia. From Atlanta, Georgia, Mulawwah was going to arrive in Houston, Texas by flying into the George Bush International Airport located in Houston, Texas. FBI was able to confirm that Mulawwah arrived in Houston, Texas, on November 19, 2021. Once Mulawwah arrived in

Houston, Texas, SOURCE 1 reported that Mulawwah rented a Nissan Versa bearing Texas tag PRD 3649. FBI confirmed that the vehicle is registered to Sixt Rent A Car Houston Airport located at 17330 Palmetto Pines, Suite A7, Houston, Texas, 77302. SOURCE 1 reported that Mulawwah paid approximately $1,050.00 for a 12-day vehicle rental. FBI was also able to confirm that Mulawwah purchased airline tickets to travel from Houston, Texas, to France on December 1, 2021, which equals a trip duration of 12 days.

**F. FBI surveillance on Mulawwah further corroborated SOURCE 1 reporting to the FBI and identified further suspicious activity of Mulawwah.**

58.     On November 23, 2021, SOURCE 1 reported that Mulawwah increased spending habits in the Houston, Texas, area and enriched herself on a shopping spree while paying for items in cash. According to SOURCE 1, Mulawwah described her spending as "free money" and appeared to spend cash carelessly. SOURCE 1 further reported that Mulawwah was purchasing items at various retail stores for the purposes of taking items, clothing in particular, back to Morocco for herself and Shalash. FBI surveillance confirmed that Mulawwah was seen shopping at various stores in the Houston, Texas area. On or about this same date, SOURCE 1 reported that Mulawwah attempted to purchase a Rolex; however, the particular Rolex that she wanted would take up to six months or longer to order. Mulawwah offered to pay extra for expedited shipping but was advised that the Rolex would still take up to six months to order.

59.     On or about this same day, SOURCE 1 reported that Mulawwah was planning to travel back to the United States frequently and slowly take cash back with her to Morocco. SOURCE 1 further reported that when departing Houston, Texas, on December 1, 2021, Mulawwah's plan was to take just under $10,000.00 in cash with her back to Morocco. According to SOURCE 1, Mulawwah believed that taking any amount that was $10,000.00 or less would go undetected as she traveled out of the United States.

60.     On November 24, 2021, SOURCE 1 reported that Mulawwah was tired from the excess shopping she was doing in Houston, Texas. SOURCE 1 further reported that Mulawwah's plan was to purchase high dollar items in the United States and take them to Morocco to sell. FBI surveillance confirmed that Mulawwah had been out shopping at various stores on this date.

61.     On November 26, 2021, SOURCE 1 reported that Mulawwah and Shalash needed cash to purchase a floor in the building they were residing in located in Morocco. SOURCE 1 also reported that Mulawwah met Shalash on Facebook and flew from Houston, Texas, to Cincinnati, Ohio, where they had their Islamic marriage. After Mulawwah and Shalash had their Islamic marriage, they drove back to Houston, Texas, in a luxury vehicle. On this same date, SOURCE 1 gained information that Mulawwah was in possession of $10,000.00 cash and gave the cash to a relative for safekeeping until her flight back to Morocco. The cash was contained in an envelope with "Abby" written on the front – which is a nickname of Mulawwah. (Note: Location of cash was disclosed to the FBI; however, will not be disclosed in the criminal complaint for security and privacy issues.) SOURCE 1 indicated this $10,000.00 cash was in the possession of Mulawwah's relative for safekeeping and Mulawwah planned to retrieve it from the relative just before her departure.

62.     On November 27, 2021, SOURCE 1 reported that Mulawwah was in the process of changing her airline flight back to Morocco to depart Houston, Texas, on an earlier date. FBI confirmed that Mulawwah changed her flight to depart Houston, Texas, on November 28, 2021, instead of departing on December 1, 2021. As November 27, 2021, SOURCE 1 reported that Mulawwah still had not retrieved the $10,000.00 cash that was in safekeeping at her relative's residence.

**G.  FBI obtained a seizure warrant on Mulawwah's PNC safe deposit box.**

26

63.     On November 23, 2021, FBI obtained Federal seizure warrant number 1:21-MJ-00905 to execute at PNC located at 14550 Memorial Drive, Houston, Texas, for Mulawwah's safe deposit box number 710740900337. On November 29, 2021, FBI executed the Federal seizure warrant at PNC and found approximately $300,000 in Mulawwah's safe deposit box. My knowledge, training, and experience would lead me to believe that Mulawwah's intent for keeping cash in her safe deposit box was to conceal the criminal proceeds of Shalash.

64.     PNC access logs for safe deposit box number 710740900337 indicated that Mulawwah accessed the safe deposit box on November 22, 2021. Mulawwah's access to the safe deposit box after her arrival to Houston, Texas, from Morocco not only corroborates SOURCE 1 reporting, but would lead me to believe that Mulawwah gained access to cash she had stored in the safe deposit box, in particular the $10,000.00 cash that she gave to her relative for safekeeping, for the purposes of transporting funds from a place in the United States to or through a place outside the United States while knowing that the funds involved in the transportation represent the proceeds of some form of unlawful activity.

**H.  On November 28, 2021, Mulawwah knowingly made false statements to federal agents during a voluntary interview.**

65.     On November 28, 2021, FBI Agents made contact with Mulawwah at the George Bush Intercontinental Airport. Agents located Mulawwah sitting in the terminal prior to her departing on a Turkish Airlines flight talking loudly on her phone. FBI sat behind Mulawwah and could hear Mulawwah talking. FBI was able to see Mulawwah's phone which indicated that she was communicating with an individual she had programmed as "Ish". During the conversation, Mulawwah made references to money and Morocco, and expressed to the individual that she regretted marrying him.

66.     FBI Agents approached Mulawwah and requested to speak with her in a private room. Mulawwah agreed and followed FBI Agents to the private room located close to her terminal. FBI Agents informed Mulawwah that the interview was voluntary, that she needed to be truthful, and that being dishonest was a crime. Mulawwah expressed that she understood. When asked if Mulawwah knew the purpose of the interview, she told FBI Agents that she believed FBI Agents wanted to speak to her about Shalash, who she referred to as "my ex". Mulawaah told FBI Agents that she was no longer married to Shalash and that she had not had contact with him since September 2021. Mulawwah denied any knowledge of Shalash's criminal activities, other than having seen information online. Further, Mulawwah denied knowing Shalash's whereabouts and maintained she had no contact with him since their relationship ended in September 2021.

67.     During the interview, Mulawwah confirmed that she had a safety deposit box at PNC; however, refused to disclose to FBI Agents the contents of the box.

68.     FBI Agents placed Mulawwah under arrest for violating 18 U.S.C. § 1001 (False Statements). During processing, Mulawwah informed the FBI Agents that she was willing to cooperate and tell "everything". Further, during a search of her belongings incident to arrest, FBI Agents located over $9,000.00 in United States currency, among other items. One of the other items was an envelope labeled "Box #337" containing keys.

## III. CONCLUSION

A. Based on the foregoing, I request that the Court issue the proposed criminal
complaint. There is probable cause to believe that violations of 18 U.S.C. § 1001
(False Statements), 18 U.S.C. § 371 (Conspiracy to Defraud the United States) and 18
U.S.C. § 1956 (Money Laundering) among other offenses, have been committed by
Abir Mulawwah. I, therefore, respectfully request that warrants be issued authorizing
the arrest of Abir Mulawwah.


Respectfully submitted,

_____
Ferron M. Yi
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me on this ___29th__ day of November, 2021.
**via electronic means, specifically Facetime video.**

_____
HONORABLE STEPHANIE BOWMAN
UNITED STATES MAGISTRATE JUDGE